JOSEPH KOPACKA *vs.* THE NEW YORK, NEW HAVEN AND
HARTFORD RAILROAD COMPANY.

First Judicial District, Hartford, January Term, 1914.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The plaintiff, a salesman, who was accustomed to railroad travel, by
    running forty or fifty feet overtook and attempted to board a train
    which was moving out of the station.   He wore a heavy overcoat
    extending below the knees and carried in his right hand a travelling
    bag and another package.   With his left hand he seized the rear
    hand-rail of the last car but one and had his left foot upon the low-
    est step when the train, increasing its speed, started forward with
    a sudden jerk or jolt which loosened his hold and threw him to the
    station platform where he was injured by the following car, which
    carried express matter.   *Held* that under these circumstances the
    plaintiff was properly nonsuited, since the jury could not reasonably
    have found that he was in the exercise of due care in attempting to
    board the train.
Seeing the plaintiff running after the train, the brakeman threw open
    the platform gate of the car which he was on the point of closing.
    *Held* that if this could be treated as an invitation to the plaintiff
    to board the train, it was not an assurance that the attempt could
    be safely made, in view of the self-evident danger attending the
    situation, a danger which the plaintiff as an experienced traveller
    was bound to understand.

Argued January 14th—decided March 5th, 1914.

ACTION to recover damages for personal injuries al-
leged to have been caused by the defendant's negligence,
brought to the Superior Court in Hartford County

Kopacka *v.* New York, N. H. & H. R. Co.

where the plaintiff was nonsuited in a trial to the jury before *Tuttle, J.*, from which judgment he appealed. *No error.*

The plaintiff was the only witness as to the facts surrounding the accident. He was a travelling salesman of electric clocks, accustomed to railway travel, and on the morning of the accident was intending to take an early train from Hartford to Waterbury, and to remain away two days. Being late, he walked rapidly through the station, carrying his travelling bag in one hand and an electric clock, weighing about nine pounds, in the other, rushed up the stairs to the station platform, and saw that the train was already moving at about two miles an hour. The rear car, directly opposite the top of the stairs, was an express-car, and forward of that was a passenger-car upon whose rear platform a trainman was making ready to close the gate, but, seeing the plaintiff, flung it wide open again. The plaintiff then shifted his bag and clock into the right hand and made a dash for the car, the trainman shouting to him to look out for the ice, referring to two patches on the station platform. Plaintiff ran about forty-five feet, caught the rear handrail with his left hand, and had his left foot only on the rear step when a sudden violent jerk of the car threw him backward to the station platform, and his right foot was crushed under the wheels of the following express-car.

The plaintiff then weighed two hundred and fifteen pounds and wore an overcoat reaching below his knees. He testified that the speed of the train had probably increased somewhat while he was attempting to catch it. The negligence alleged is in so operating the train that the jerk occurred, and in giving no warning thereof, and in making up the train with an express-car in the rear of the passenger-car, whereby the safety of passengers who might be thrown from the passenger-car was unnecessarily endangered.

*Stewart N. Dunning* and *Alexander W. Creedon,* for the appellant (plaintiff).

*John T. Robinson* and *Francis W. Cole,* for the appellee (defendant).

BEACH, J.  The controlling question in the case is whether the jury could reasonably have found that the plaintiff was in the exercise of due care in attempting to board the train under the circumstances stated in his testimony.

It was also claimed that the plaintiff had so far succeeded in boarding the train that he was already in a place of safety when the jerk occurred which threw him to the station platform, so that his previous conduct, even if imprudent, had nothing to do with the accident. This last claim is untenable.  The plaintiff described in detail his position when the jerk occurred.  At that time his left hand gripped the railing behind the step, his right hand was occupied with the travelling bag and clock, his left foot was on the lower step, and his right foot raised to reach the second step.  Considering that his right hand was occupied and his hold on the railing was behind the weight of his body, his position was still unstable and precarious, and the jury could not reasonably have found that he had reached a position of safety.

It is claimed that the plaintiff, who was a strong active man, took no undue risk in attempting to board a slowly moving train; but his own testimony indicates that he recognized the existence of the risk and hesitated about making the attempt.  He testified that after rushing up the stairs because he did not wish to lose the train, and after finding that the train was moving, and the car directly opposite was an express-car, he hesitated, as he said in his direct examination, for a

minute whether he should get the train or not; and, on cross-examination, that he stopped a moment to make up his mind whether he had better try to board the train or not; and then, seeing the gate swung open, "made a dash for the car," jumping the two patches of ice on the way. All the conditions for attempting to catch the train were unfavorable. The plaintiff was encumbered by his overcoat and luggage, the station platform was slippery in spots, and the train, which was increasing its speed, must be boarded by running up from behind, at a point in front of the following express-car. These things were apparent, and the plaintiff's testimony shows that his final dash for the car was the outcome of indecision and sudden impulse. It resulted, not unnaturally, that the plaintiff found himself clinging insecurely to the steps of the car when the jolt occurred which dislodged him.

As to the effect of the trainman's act in throwing open the gate of the car, we are referred to some authorities holding that an invitation to leave or enter a moving train amounts to an assurance that the attempt may safely be made, and that the risk will not be increased while the passenger is acting on the invitation. This rule must evidently be limited to cases where the danger is slight, or its full extent not apparent at the time, so that the passenger is reasonably entitled to rely on the invitation as an assurance of safety. If, for the purposes of this decision, the act and speech of the trainman be treated as an invitation to the plaintiff to run for the train, the danger of accepting the invitation still remained obvious to an experienced traveller who made use of his senses. It was at best an invitation to assume a self-evident risk; addressed to a person who was bound to understand the danger of accepting it.

This view of the case makes it unnecessary to determine whether the defendant was negligent either in the

operation of the train, or in its make-up. The nonsuit was rightly granted, for the reason that the jury could not reasonably have found that the plaintiff was in the exercise of due care in attempting to board the train.

There is no error.

In this opinion the other judges concurred.